[Civ. No. 7594. Second Appellate District, Division Two.—April 4, 1933.]

ZONA DEAN PECHT, as Administratrix, Respondent, v. COLBY MANAGEMENT CORPORATION (a Corporation), Appellant.

Kelly, Stuart & Hendrick and Edward A. Stuart for Appellant.

Neil S. McCarthy, Earl L. Banta and Howard P. Hall for Respondent.

WORKS, P. J.—This action was commenced for the purpose of recovering the consideration paid by plaintiff, because of the fraud and misrepresentation of defendant, for certain alleged void certificates of stock in defendant, a corporation. Judgment went for plaintiff and defendant appeals.

Since the appeal the original respondent has deceased and his administratrix has been substituted in his stead. Throughout this opinion, however, we shall refer to "respondent" as if the substitution had not been made.

The commissioner of corporations had issued to appellant a permit to sell certain shares of its stock. The permit required: "That a true copy of this permit be exhibited and delivered to each prospective subscriber for, or purchaser of, said securities before his subscription therefor shall be taken or any sale thereof made to him." The trial court found that no copy of the permit was exhibited to respondent before he purchased his stock, and it is claimed by appellant that there was no evidence to support this finding; indeed, that the evidence shows the contrary without dispute. Respondent signed eight separate "subscriptions" for the stock which he purchased, and on each of the subscription blanks was printed, immediately above the place where he signed, this language: "(Copy of Corporation Commission Permit is printed on reverse side.)" A copy of the permit was actually printed on the back of each of the blanks.

As a preliminary to the final consideration of the finding that appellant did not exhibit the permit to respondent it is proper to observe that there was evidence from which the trial court could properly have found the

following facts: When respondent signed the eight subscription agreements he did not read from any of them the copy of the permit printed on its back, nor did he ever read the permit until a few months before this action was commenced. When respondent had signed the "subscriptions" an agent of appellant gave him a receipt corresponding with each and took the "subscriptions" away with him. The receipts showed no copy of the permit and contained no reference to it.

This leaves for consideration the bare question whether the statement on the front of each of the subscription agreements, "(Copy of Corporation Commission Permit is printed on reverse side)", nullifies the finding that the permit was not exhibited to respondent. We think it does not. The word "exhibit" implies, as everyone understands, some affirmative act or at least some conduct upon the part of the person charged with the duty of exhibiting a thing or who exhibits it. When the corporation commissioner charged appellant to "exhibit" the permit he meant that appellant should "show" it. The language printed above the place where respondent signed the subscription agreements did not exhibit or show the permit. It did not invite respondent to read the permit, nor even suggest that he read it. Suppose a man says to another, "1 have a Jersey cow in my pasture." Surely he cannot be said, by this remark, to exhibit the cow to the man he addresses. The finding that the permit was not exhibited to respondent is supported by the evidence.

In upholding the finding we have not overlooked *Gridley* v. *Tilson*, 202 Cal. 748 [262 Pac. 322], and other cases referred to by appellant. The one just cited is apparently the strongest decision upon which appellant relies. In that case the corporation commissioner had issued a permit to sell corporate stock and had required that the permit be "exhibited and delivered" to prospective purchasers of the stock. The permit was printed on the back of application blanks for the purchase of the output, but the application contained on its face the statement: "I have read the copy of the permit which is printed on the back of this application." The application also contained a provision limiting the authority of agents of the corporation to make binding representations, and in considering this provision the Su-

preme Court said that a signer of one of the applications could not escape its effect "by testifying that he did not have his glasses with him at the time he signed . . . " Later on the court used the following language, which is closer to the particular question presented here: "The plaintiff contends that the finding of the court that a true copy of the permit was not exhibited and delivered to defendant is without support in the evidence. There was no issue in the pleadings on this point, and as a copy of the permit was printed on the back of the subscription contract the finding of the court appears to be unsupported." This latter language is very general, so general indeed that, if we but look at the letter, it governs a case in which the copy of a permit is printed on the back of a subscription contract without reference to it on the face, a state of affairs which is unthinkable. The language is, of course, to be considered in connection with and is limited by the fact that the signer of the agreement had certified in it that he had read the permit on its back; in effect, that it had been "exhibited" to him. Thus viewed the situation is very different from the one presented here. The statement on the face of the agreement now before us—"(Copy of Corporation Commission permit is printed on the reverse side)"—was not even made by respondent. It was but a voluntary statement of appellant inserted in its printed form of subscription contract. It put no notice whatever upon respondent, either that the permit had been required to be exhibited to intending purchasers or that there was any mandate in it which the agent of appellant was about to violate. Respondent, on seeing the statement concerning the permit, had the right to assume that it was made, and that the permit was printed on the reverse side of the contract merely to show that the corporation had procured the corporation commissioner's sanction for the sale of its stock. In short, we think the decision of the Supreme Court has no bearing here.

█ The permit issued by the corporation commissioner required that the stock of appellant be sold for cash. The trial court found that the stock issued to respondent was issued in consideration for certain mortgages theretofore owned by respondent and by him transferred to appellant. It is contended that this finding was unsupported by the evidence for the reason that there was a substantial com-

pliance with the requirement that stock be sold for cash. This contention is based upon the testimony of the agent of appellant who consummated the deal with respondent. Although the mortgages were undoubtedly transferred to appellant, this witness testified to a conversation with respondent which resulted in an agreement that the stock should not be issued until the mortgages were converted into cash. It is enough to say that this conversation was categorically denied by respondent. In addition, however, the receipts issued by the agent at the time the subscription agreements were executed specifically recited that the mortgages were received in payment for the stock. As an instance of this state of affairs, one of the papers issued by the agent, after acknowledging the receipt of $800 as part payment for a certain number of shares of stock, concluded: "Also a certain first mortgage in amount of $2500.00 . . . as balance of payment on same."

Appellant makes another point but it is disposed of by what we have said in discussing the first question above considered.

Judgment affirmed.

Stephens, J., and Archbald, J., *pro tem.*, concurred.